**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PASTORA ELENA BARROETA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.:** 16-CV-7947 |
| | ) | |
| **vs.** | ) | **Hon. Judge:** |
| | ) | |
| **ASTELLAS PHARMA GLOBAL** | ) | **Magistrate Judge:** |
| **DEVELOPMENT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES Pastora Elena Barroeta ("Plaintiff" or "Ms. Barroeta"), by and through her undersigned counsel of record, and complains against Astellas Pharma Global Development, Inc. ("Defendant" or "Astellas"), and in so doing alleges, upon information and belief, except as to allegations particularly pertaining to herself, which are based on personal knowledge, states as follows:

## NATURE OF THE CASE

1.      In this action, Plaintiff alleges Defendant discriminated against Plaintiff based on her disability and retaliated against Plaintiff based on her disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"), and the Illinois Human Rights Act, 775 ILCS 5/2-101 et seq. ("IHRA").

2.      Plaintiff worked as a high-performing, director-level employee who was discriminated against and retaliated against once she became disabled.

3.      Shockingly, the aforementioned disability discrimination and retaliation occurred after Plaintiff injured herself and became disabled on a business trip—for the benefit of

Defendant—and continued until Defendant constructively discharged Plaintiff on or about February 6, 2015.

4.      Plaintiff suffered severe and egregious injury and damage as a direct and proximate result of Defendant's unlawful conduct as alleged herein.

## PARTIES

5.      Plaintiff Pastora Elena Barroeta is an individual who is a resident of New York County, New York.

6.      Defendant Astellas Pharma Global Development, Inc. is a Delaware corporation with an office located in Northbrook, Illinois.  Astellas Pharma Global Development, Inc. is a Research and Development component of the expansive Astellas Pharmaceuticals brand.

## VENUE

7.      Jurisdiction over the causes of action contained in this Complaint is conferred by 28 U.S.C. § 1331, as same arises under the laws of the United States.  Supplemental jurisdiction over Plaintiff's Illinois state law claims is conferred by 28 U.S.C. § 1367(a).

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that Defendant employed Plaintiff in this judicial district, Plaintiff resides in this judicial district, and all or a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## PROCEDURAL REQUIREMENTS

9.      Plaintiff filed a "Charge of Discrimination" with the U.S. Equal Employment Opportunity Commission ("EEOC") on or around August 3, 2015, and the EEOC cross-filed her COD with the Illinois Department of Human Rights ("IDHR").   Exhibit A: Charge of Discrimination.

10.     Plaintiff received a Notice of Right to Sue Letter from the EEOC dated May 11, 2016.  Exhibit B: Right to Sue Letter.

11.     Plaintiff has timely filed this lawsuit within 90 days from the date of the EEOC Notice of Right to Sue Letter.

## STATEMENT OF FACTS

**A.     General Allegations**

12.     Plaintiff incorporates by reference the allegations contained in her attached Charge of Discrimination.  See Exhibit A.

13.     Astellas hired Ms. Barroeta on or about October 24, 2011, as the company's Director of Regulatory Affairs for the Latin America Region.

14.     Ms. Barroeta worked as a qualified, loyal employee for Astellas for over 3 years.

15.     Unfortunately, in September of 2013, Ms. Barroeta injured herself at the Miami Airport while on a business trip as an employee for Astellas.

16.     As a result of her injury, Ms. Barroeta suffered paralysis and numbness in her left arm.  The injury required shoulder surgery and left Ms. Barroeta with severe nerve damage. Particularly, her doctors diagnosed Ms. Barroeta with "abnormal study demonstrating severe axonal left brachial plexopathy." Ms. Barroeta's recovery process would likely last over two (2) years.

17.     In effect, Ms. Barroeta was unable to use her left arm, and was referred to a pain clinic and on-going physical therapy sessions in order to best heal the nerve damage.  Her doctors advised her that the recovery process would likely last 2 years and that there is a strong possibility that she will never regain 100% functionality of her left arm.

18.     Despite her injury, Ms. Barroeta returned to work for Astellas on or about December 4, 2013.

19.     The following month, in January 2014, her doctors recommended that she attend physical therapy sessions 3 times per week. This information was communicated to Astellas.

20.     Moreover, in or about April 2014, Ms. Barroeta's doctors suggested that she work "light duty" with restrictions on any "pushing, pulling, lifting, and gripping with the left arm" until further notice.

21.     Ms. Barroeta's injury—a complete paralysis of her left arm—caused her to have difficulty typing on a keyboard and completing paper work.

22.     At all relevant times, Astellas was fully aware of Ms. Barroeta's disability, but did not offer the reasonable accommodations necessary for Ms. Barroeta to perform the essential functions of her job.

23.     In fact, Astellas increased Ms. Barroeta's workload from approximately 5 files to 34 files around the time she became disabled in an effort to get Ms. Barroeta to resign.

24.     Robert Reed, Ms. Barroeta's direct supervisor, suggested that Ms. Barroeta, despite her need to attend physical therapy sessions 3 days per week, be present in the office more to assist a co-worker in her department.

25.     In a team meeting, Ms. Barroeta communicated her struggles to Robert Reed and his supervisor. Specifically, she told them that because of the limitations of her disability, she was having trouble keeping up with the increased workload. Rather than offering any type of reasonable accommodation or otherwise engaging in an interactive process to determine an effective way to accommodate Ms. Barroeta's disability, Astellas ultimately placed Ms. Barroeta on a 30-60-90 day Employee Improvement Plan ("Improvement Plan").

26.    However, perhaps most troubling, during Ms. Barroeta's time on the Improvement Plan, Robert Reed told Ms. Barroeta that the Human Resources Department should keep her disability issues separate from her Improvement Plan Issues.

27.    After 90 days, Robert Reed informed Ms. Barroeta that she failed to reach the 90 day improvements, and "would be terminated" unless she otherwise resigned.  As a result of this conversation, Ms. Barroeta felt compelled to resign in order to keep a termination off her record and protect her prospects for future gainful employment.  Defendant gave Plaintiff two choices: quit or be fired.  She informed Astellas of her resignation, effective February 6, 2015.

28.    On or about February 6, 2015, Astellas constructively discharged Plaintiff as a result of her disability and need for reasonable accommodations.

## COUNT I

### DISABILITY DISCRIMINATION
### IN VIOLATION OF
### THE AMERICANS WITH DISABILITIES ACT OF 1990,
### 42 U.S.C. § 12101 et seq.

29.    Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

30.    All conditions precedent to Count I have been satisfied.

31.    Plaintiff was an employee of Defendant as defined by the ADA from approximately October 24, 2011 through the date of her constructive discharge on or about February 6, 2015.

32.    Defendant is an employer as defined by the ADA.

33.    Plaintiff has a disability recognized under the ADA as she has been diagnosed with axonal left brachial plexopathy which substantially limits one or more major life activities.

34.     Plaintiff is a qualified individual under the ADA in that she was capable of performing the essential functions of her job with or without a reasonable accommodations at all relevant times.

35.     At all times relevant, Defendant was fully aware of Plaintiff's disability.

36.     Defendant discriminated against Plaintiff by refusing to engage in the interactive process as required under the ADA to determine whether the company could provide an effective reasonable accommodation to allow Plaintiff to enjoy equal employment opportunities.

37.     Upon learning of her disability, Defendant discriminated against Plaintiff by altering the terms and conditions of her work.   Particularly, Defendant increased Plaintiff's workload from approximately 5 files to 34 files.

38.     The actions of Defendant as described above are unlawful employment practices in that they had the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff, in violation of the ADA.

39.     At all times relevant to this cause of action, Defendant had a duty under the ADA to prevent Plaintiff from being discriminated against on basis of her disability.

40.     Defendant's actions, through its management, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights of Plaintiff.

41.     Defendant's conduct alleged herein directly and proximately caused Plaintiff severe harm and damages, including great mental anguish, physical and emotional pain and suffering, lost compensation and benefits, and other damages, and as such, is entitled to all legal and equitable remedies available under the ADA.

## COUNT II

**RETALIATION AND CONSTRUCTIVE DISCHARGE
IN VIOLATION OF
THE AMERICANS WITH DISABILITIES ACT OF 1990,
42 U.S.C. § 12101 et seq.**

42.     Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

43.     All conditions precedent to Count I have been satisfied.

44.     Plaintiff was an employee of Defendant as defined by the ADA from approximately October 24, 2011 through the date of her constructive discharge on or about February 6, 2015.

45.     Defendant is an employer as defined by the ADA.

46.     Plaintiff has a disability recognized under the ADA as she has been diagnosed with axonal left brachial plexopathy which substantially limits one or more major life activities.

47.     Plaintiff is a qualified individual under the ADA in that she was capable of performing the essential functions of her job with or without a reasonable accommodations at all relevant times.

48.     At all times relevant, Defendant was fully aware of Plaintiff's disability.

49.     Plaintiff communicated her struggles to her supervisor, Robert Reed, along with his superior and specifically told them that because of her limitations as a result of her disability, she was having trouble keeping up with the increased workload, and sought to engage Defendant in the interactive process to determine whether a reasonable accommodation could be made.

50.     Rather than offering any type of reasonable accommodation or otherwise engaging in an interactive process to determine an effective way to accommodate Plaintiff's disability, Defendant retaliated against Plaintiff by placing her on a 30-60-90 day Employee

Improvement plan.

51.     After failing to engage in the interactive process or offer any reasonable accommodation, and placing Plaintiff on the Employee Improvement Plan, Defendant communicated to Plaintiff that she would be terminated if she did not resign.

52.     The terms and conditions of Plaintiff's employment became so difficult due to the retaliation that any reasonable person in Plaintiff's position would feel compelled to resign.

53.     Ultimately, Defendant constructively discharged Plaintiff on or about February 6, 2015.

54.     At all times relevant to this cause of action, Defendant had a duty under the ADA to not retaliate against Plaintiff on basis of her disability.

55.     Defendant's actions, through its management, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights of Plaintiff.

56.     Defendant's conduct alleged herein directly and proximately caused Plaintiff severe harm and damages, including great mental anguish, physical and emotional pain and suffering, lost compensation and benefits, and other damages, and as such, is entitled to all legal and equitable remedies available under the ADA.

## COUNT III

### DISABILITY DISCRIMINATION
### IN VIOLATION OF
### THE ILLINOIS HUMAN RIGHTS ACT, 775 ILCS 5/2-101 et seq.

57.     Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

58.     All conditions precedent to Count III have been satisfied.

8

59. Plaintiff was an employee as defined by the IHRA and Defendant was an employer as defined by the IHRA.

60. Plaintiff has a disability recognized under the IHRA as she has been diagnosed with axonal left brachial plexopathy which substantially limits one or more major life activities.

61. Plaintiff is a qualified individual under the IHRA in that she was capable of performing the essential functions of her job with or without a reasonable accommodations at all relevant times.

62. At all times relevant, Defendant was fully aware of Plaintiff's disability.

63. Defendant refused to engage in the interactive process as required under the IHRA to determine whether the company could provide an effective reasonable accommodation to allow Plaintiff to enjoy equal employment opportunities.

64. Upon learning of her disability, Defendant discriminated against Plaintiff by altering the terms and conditions of her work. Particularly, Defendant increased Plaintiff's workload from approximately 5 files to 34 files.

65. The actions of Defendant as described above are unlawful employment practices in that they had the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff, in violation of the IHRA.

66. At all times relevant to this cause of action, Defendant had a duty under the IHRA to prevent Plaintiff from being discriminated against on basis of her disability.

67. Defendant's actions, through its management, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights of Plaintiff.

68.    Defendant's conduct alleged herein directly and proximately caused Plaintiff severe harm and damages, including great mental anguish, physical and emotional pain and suffering, lost compensation and benefits, and other damages, and as such, is entitled to all legal and equitable remedies available under the IHRA.

## COUNT IV

### RETALIATION AND CONSTRUCTIVE DISCHARGE
### FOR EXERCISE OF RIGHTS UNDER
### THE ILLINOIS HUMAN RIGHTS ACT, 775 ILCS 5/2-101 et seq.

69.    Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

70.    All conditions precedent to Count I have been satisfied.

71.    Plaintiff was an employee of Defendant as defined by the IHRA from approximately October 24, 2011 through the date of her constructive discharge on or about February 6, 2015.

72.    Defendant is an employer as defined by the IHRA.

73.    Plaintiff has a disability recognized under the IHRA as she has been diagnosed with axonal left brachial plexopathy which substantially limits one or more major life activities.

74.    Plaintiff is a qualified individual under the IHRA in that she was capable of performing the essential functions of her job with or without a reasonable accommodations at all relevant times.

75.    At all times relevant, Defendant was fully aware of Plaintiff's disability.

76.    Plaintiff communicated her struggles to her supervisor, Robert Reed, along with his superior and specifically told them that because of her limitations as a result of her disability, she was having trouble keeping up with the increased workload, and sought to engage Defendant

in the interactive process to determine whether a reasonable accommodation could be made.

77.     Rather than offering any type of reasonable accommodation or otherwise engaging in an interactive process to determine an effective way to accommodate Plaintiff's disability, Defendant retaliated against Plaintiff by placing her on a 30-60-90 day Employee Improvement plan.

78.     After failing to engage in the interactive process or offer any reasonable accommodation, and placing Plaintiff on the Employee Improvement Plan, Defendant communicated to Plaintiff that she would be terminated if she did not resign.

79.     The terms and conditions of Plaintiff's employment became so difficult due to the retaliation that any reasonable person in Plaintiff's position would feel compelled to resign.

80.     Ultimately, Defendant constructively discharged Plaintiff on or about February 6, 2015.

81.     At all times relevant to this cause of action, Defendant had a duty under the IHRA to not retaliate against Plaintiff on basis of her disability.

82.     Defendant's actions, through its management, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights of Plaintiff.

83.     Defendant's conduct alleged herein directly and proximately caused Plaintiff severe harm and damages, including great mental anguish, physical and emotional pain and suffering, lost compensation and benefits, and other damages, and as such, is entitled to all legal and equitable remedies available under the IHRA.

        **WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

        a)      Damages sufficient to compensate Plaintiff for her injuries;

11

b)     Back Pay;

c)     Emotional Distress Damages;

d)     Pre-judgment and post-judgment interest;

e)     Punitive damages;

f)     Reasonable attorneys' fees;

g)     An award of litigation costs and expenses; and

h)     Any and all other relief that this Honorable Court may deem just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated:   August 8, 2016                    Respectfully submitted,

FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC

/s/Peter L. Currie
Kathleen C. Chavez, Esq. (#06255735)
Peter L. Currie, Esq. (#6255735)
Kevin P. Noll, Esq. (#06313611)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street; Suite #200
Geneva, Illinois 60134
Telephone: (630) 232-7450
Facsimile:  (630) 232-7452
kcc@fmcolaw.com
plc@fmcolaw.com
kpn@fmcolaw.com

*Attorneys for Plaintiff*